MELLEN v. VONDOR-HORST BROS., et al.

No. 2576.   Decided April 2, 1914 (140 Pac. 130).

1. APPEAL AND ERROR—QUESTIONS REVIEWABLE—ASSIGNMENTS OF ERROR—SUFFICIENCY. Where the court's ultimate conclusions disclosed by the judgment are contrary to law applicable to the undisputed facts, appellant, assigning error on the judgment, may have the error reviewed, regardless of whether he may have other assignments reviewed.   (Page 306.)

2. MUNICIPAL CORPORATIONS—IMPROVEMENT CONTRACTS—LABOR AND MATERIALS—REMEDIAL STATUTES—CONSTRUCTION.   Comp. Laws 1907, sec. 1400x, authorizing any laborer or materialmen of a contractor of any public corporation for the construction of any public work to maintain an action for the labor or materials, and obtain a judgment for the amount due to the contractor, is a remedial statute, and must, in furtherance of justice, receive a liberal construction and application to accomplish its purpose.   (Page 307.)

3. MUNICIPAL CORPORATIONS—CONTRACTS FOR PUBLIC BUILDINGS— RIGHTS OF LABORERS AND MATERIALMEN.   The action authorized by Comp. Laws 1907, sec. 1400x, authorizing actions by laborers and materialmen of contractors of school districts and other public corporations for public work to recover judgment not in excess of the amount due the contractor, is one to reach a fund, and is maintainable without first obtaining a personal judgment against the contractor, and without obtaining personal service on the contractor, who is a nonresident, and it is only necessary to show that a part of the contract

price is unpaid and in the hands of the public corporation. (Page 307.)

4. MUNICIPAL CORPORATIONS—LIABILITY OF SURETY. Where the surety of a contractor of a school district for the erection of a school building agreed to perform the contract on the abandonment of the work by the contractor, and applied labor and materials furnished the contractor for the building, the contract was not abandoned, but the surety took the place of the contractor, and the laborers and materialmen of the contractor could, under Comp. Laws 1907, sec. 1400x, recover the amount due from the district under the contract, and thereby satisfy their claims. (Page 310.)

5. MUNICIPAL CORPORATIONS—LIABILITY OF SURETY. One furnishing labor or materials in the erection of a building of a public corporation need only, when seeking judgment under Comp. Laws 1907, sec. 1400x, for the amount due from the public corporation to the contractor, allege and prove the making of the contract for the work and that he furnished labor and material for the contractor in the erection of the building, that same has not been paid for, and that a part of the contract price remains in the hands of the public corporation, and he may then obtain relief, though the contractor abandoned the work and his surety completed it according to the contract. (Page 314.)

6. MUNICIPAL CORPORATIONS—LIABILITY OF SURETY. One seeking judgment, under Comp. Laws 1907, sec. 1400x, for labor and materials furnished in the erection of a public building need not, as against the contractor's surety, allege that certificates of the architect, provided for in the contract, were issued, because his claim is based on the statute and not on the contract. (Page 217.)

APPEAL from District Court, Third District; *Hon. T. D. Lewis,* Judge.

Action by Joseph W. Mellen against Vondor-Horst Brothers and others.

Judgment for dismissal rendered after the sustaining of a demurrer to the complaint, interposed by defendant, The Fidelity & Deposit Company of Maryland. Plaintiff appeals.

REVERSED AND REMANDED WITH DIRECTIONS.

*Stewart, Stewart & Alexander* for appellant.

*Pierce, Critchlow & Barrette* for respondent.

FRICK, J.

Joseph W. Mellen, the appellant, commenced this action against Vondor-Horst Bros., a corporation, hereafter called the contractor, and against the board of education of Salt Lake City, hereafter designated respondent, to recover the value of labor and material which it is conceded he performed and furnished the contractor for the construction of a certain school building for respondent, as hereinafter stated. Appellant also made the Fidelity & Deposit Company of Maryland, hereafter called surety company, a party to the action, but the court sustained the demurrer of the surety company to the complaint against it, and thus the surety company went out of the case. No service was obtained upon the contractor, which is a nonresident corporation of and absent from the State of Utah. It is not necessary to refer to the pleadings. The respondent and the surety company were represented by the same counsel in the court below. The facts are really quite simple and are not in dispute.

On or about November 2, 1908, the respondent entered into a written contract with the contractor whereby the latter agreed to erect and complete a certain school building in Salt Lake City for the agreed price of $71,000. One of the conditions of said contract was that said contractor should furnish a bond, as required by our statute, for the sum of $35,500, conditioned for the faithful performance of said contract, and the surety company executed and delivered the bond aforesaid. After the contract and the bond had been executed and delivered, the contractor in pursuance of said contract, employed the appellant to make the excavation for the basement of the school building and to furnish some sand and gravel, all of which was to be used, and which it is conceded was used, in the construction of said building, and which excavation and material is conceded by respondent to be of the value of $2148.45, and that all was used in

the construction of said school building. After the excavation had been made and the material furnished as aforesaid, and some trees had been removed from the building site, the contractor proceeded no farther with the contract. The respondent, on the 6th day of April, 1909, using the language of its counsel, "after repeated efforts to locate" the contractor, terminated its employment under the contract. Immediately after terminating the employment of the contractor under said contract, respondent wrote the surety company as follows:

"The board of education of Salt Lake City, Utah, on the evening of the 6th day of April, 1909, at a regular session of said board passed a resolution terminating the employment of Vondor-Horst Brothers, a corporation, under that certain contract made and entered into by and between said Vondor-Horst Brothers, a corporation, with the said board on the 2d day of November, 1908, a copy of which resolution is herewith served upon you, together with a copy of the certificate of said architect made on said 6th day of April, 1909. The said board will therefore proceed in accordance with article five of said contract to complete the work included in said contract."

The surety company on April 17, 1909, replied to said letter as follows:

"As surety upon the bond of said Vondor-Horst Bros. we hereby offer to undertake the construction and completion of the said Jefferson school in accordance with the terms and condition of the contract given by you to said Vondor-Horst Bros. and in accordance with the plans and specifications referred to in said contract. We will place a reliable contractor upon the work and rush the same to completion. *All payments specified in the Vondor-Horst contract shall be made to us (as) they become due and we will settle with the contractor.*" (Italics ours.)

On the 19th, two days thereafter, the respondent accepted the proposition of the surety company by adopting the following resolution:

"Resolved: (1) That the said offer made by the Fidelity & Deposit Company of Maryland, the surety as aforesaid, be and the same is hereby accepted, and the said Fidelity & Deposit Company of Maryland is hereby given the right to enter upon the lands and premises upon which the building under said contract is to be constructed and take possession of all materials, tools, and appliances thereon; (2) that all sums of money payable under said contract, as the same become due and payable, as therein set forth, shall be made to the said Fidelity & Deposit Company of Maryland at Salt Lake City, Utah, and in accordance with the terms and conditions of said contract."

The employment of the contractor was terminated by respondent pursuant to certain provisions contained in the contract, which are as follows:

"Article 5. Should the contractors at any time refuse or neglect to supply a sufficiency of properly skilled workmen, or of materials of the proper quality, or fail in any respect to prosecute the work with promptness and diligence, or fail in the performance of any of the agreements herein contained, such refusal, neglect or failure being certified by the architects, the owner shall be at liberty, after three days' written notice to the contractors, to provide all such labor or materials and deduct the cost thereof from any money then due or thereafter to become due the contractors under this contract; and if the architects shall certify that such refusal, neglect or failure is sufficient ground for such action, the owner shall also be at liberty to terminate the employment of the contractors for the work and to enter upon the premises and take possession, for the purpose of completing the work included under this contract, of all materials, tools and appliances thereof, and to employ any other person or persons to finish the work and to provide the materials therefor; and in case of such discontinuance of the employment of the contractors they shall not be entitled to receive any further payment under this contract until such work shall be wholly finished, at which time, if the unpaid balance of the amount to be paid under this contract shall exceed all

expenses incurred by the owner in finishing the work such excess shall be paid by the owner to the contractors, but if said expenses shall exceed said unpaid balance the contractors shall pay the difference to the owner. The expenses incurred by the owner, as herein provided, either for furnishing materials or for finishing the work, and any damage incurred through said default, shall be audited and certified by the architects, whose certificates thereof shall be conclusive upon the parties."

The surety company, pursuant to the resolution, and with the consent of the respondent, and in accordance with the terms and condition of the contract entered into between the contractor and the respondent, erected and completed said school building according to the plans and specifications, and in doing so used the excavation made by appellant, and also used the material furnished by him, and received from respondent certain payments in accordance with the terms of the contract. It also did some extra work for which it was allowed extra pay. The surety company, in completing said school building, however, expended considerable more money than the contract price, for which it has received nothing. While the building was in process of construction, and after the surety company had appropriated appellant's labor and material, he, pursuant to Comp. Laws 1907, section 1400x, to which we shall refer hereafter, filed a claim with respondent for the amount claimed by him, and asked that his claim be paid out of the money due on the contract. In view of said claim, respondent withheld from the contract price approximately $4000, so that, in case it shall be held by the courts that appellant's claim should be paid out of the money due on the contract, such might be done without harm to respondent. The $4000 is still in the hands of respondent and is by it held until it is determined whether it is all to be paid to the surety company or part thereof to appellant in payment of his claim.

The district court, it seems, proceeded on the theory that in view that there was no privity of contract between appel-

44 Utah—20

lant and the surety company, and further that in its bond it
had not obligated itself to pay any claims against or obliga-
tions assumed by the contractor, for those reasons appellant
had no cause of action against the surety company. The court
further held that there was nothing due from the respondent
to the contractor upon the contract, and that for that reason
appellant cannot recover against respondent under section
1400x, which, so far as material here, is as follows:

"Any person partnership, or corporation who has done
work or labor or furnished materials to any principal con-
tractor for the construction or repair of any public work of
any character for any county, town, city, village or school
district, may maintain an action therefor in the county in
which such work, labor, or materials were done or furnished,
against such principal contractor and such county, town,
city, village, or school district, jointly, for the recovery there-
of; but no judgment shall be rendered against any defendant
therein, other than such principal contractor, for any amount
greater than the amount due from it to such principal con-
tractor at the time of the commencement of such action. Such
county, town, city, village, or school district, when served
with summons in any such action, may give notice thereof
to such principal contractor, and on so doing need not fur-
ther defend such action. On rendition of judgment in such
action against such principal contractor, the court may also
render judgment against such county, town, city, village or
school district for the amount due from it to such principal
contractor at the time of the commencement of such action,
or for a sufficient amount to pay the judgment recorded
against the principal contractor, and payment thereof shall
discharge its indebtedness to such principal contractor, in
the amount so paid."

The court therefore dismissed appellant's complaint and
denied him any relief, and he appeals.

At the threshold we are met with respondent's counsel's
contentions that, in view of the record, there is nothing
before us for review. Without now setting forth the
actual state of the record, it must suffice to say that

appellant has assigned error in the judgment and now insists that the court erred in entering the judgment or decree appealed from against him. The ultimate conclusions of the court are reflected in the judgment, and, if those conclusions are clearly contrary to the law which is applicable to the undisputed facts, then the judgment is erroneous, and the appellant, having assigned error upon it has a right to have that error reviewed, regardless of whether he is also entitled to have his other assignments reviewed or not. Counsel's contentions, therefore, cannot prevail.

The rights of appellant against the fund in question, as well as the remedy which shall be applied, must be determined upon equitable principles rather than upon strict legal rules. The statute we have quoted is, in and of itself, highly remedial, and must thus, in furtherance of justice, receive a liberal construction and application so as to accomplish its real object and purpose. Before the statute was enacted those who furnished materials or performed labor for any contractor on any public building or structure were required to look for their compensation to the contractor who constructed the building or structure alone.

Under the statute, however, any person who has furnished any materials or has performed any labor for such contractor for the construction of such building may, at any time before the contract price has been fully paid, bring an action setting forth the foregoing facts, and, if anything is due from such contractor to such person for such materials or labor, the latter may obtain pay directly from the fund held by the public corporation for which the building is constructed to the extent that there is anything in the hands of such corporation which is due on the contract. Under the statute where the contract is conceded, the only two questions to be determined are: (1) Is there anything due by the contractor to the claimant for materials furnished or labor performed for the construction of the public building or structure? And (2) was there any part of the contract price in the hands of the public corporation at the com-

mencement of such action which is to be paid on the contract? Under this statute, it is entirely immaterial whether the building costs the contractor more or less than the contract price. That is, the claimant's rights to recover against the fund does not depend on whether the contractor makes any profit on the building or not. In the case at bar the question of appellant's right to recover, it seems, was in the district court controlled by the fact that, after he had furnished the materials and performed the labor, the contractor, who had defaulted and thus had not complied with the provisions of its contract, had abandoned the contract immediately after the materials and labor in question were furnished. Having abandoned the contract, it is contended by the respondent, and the court so held, that it was not indebted to the contractor in any amount whatever, and, not being so indebted, no recovery could be had by appellant under the statute. Whether this conclusion is sound depends altogether upon whether, under the undisputed facts and circumstances of this case, appellant may or may not have recourse against the fund in the hands of respondent which should by it be paid as part of the contract price agreed on in the contract. As we construe the statute, the action therein contemplated is one by which a fund is to be reached rather than one in which a personal judgment is intended to be obtained against any one, except, possibly the contractor. In our judgment it is not essential that, in the action provided for in the statute, the person bringing it and claiming a part or all of the fund in question shall first obtain personal service on the contractor, or that a personal judgment be first obtained against him before recourse may be had against the fund in the hands of the owner of the building, in case such personal service cannot be made within the State of Utah; but it is enough if it be shown that the claimant has furnished materials or performed labor for the contractor for the construction of a public building or structure, and that there was a part or all of the contract price still unpaid and in the hands of the owner of the building or struc-

ture when the action was commenced, and that personal service could not be made upon the contractor.

This case affords a striking illustration of both the justice and utility of such a construction. Here, notwithstanding the fact that the statute (Comp. Laws 1907, section 1952), pursuant to which the building contract was entered into, provides that the respondent is required to enter into a contract with a "responsible bidder," it actually entered into a contract with a foreign corporation which, it seems, was hopelessly insolvent, if not at the time the contract was entered into, at least shortly thereafter. Moreover, this foreign corporation was one of which it seems appellant knew nothing, and with which it had no means of communicating, and of whose whereabouts, for some time before its employment under the contract was terminated, respondent according to its own statements, knew nothing, and, for aught that is made to appear, never knew anything concerning its whereabouts thereafter. If, therefore, the respondent had no means of communicating with its own contractor, which it, tacitly at least, held out as being financially and otherwise responsible by awarding the contract to it, why should a claimant under the statute be compelled to obtain personal service upon such a contractor before he may have recourse to the fund in the hands of respondent which remained unpaid on the contract price of the contract under which the claimant furnished the materials and performed the labor, all of which was used in the building which was constructed under the contract? Again, for aught that appears here, the insolvent condition of the contractor may have resulted in a dissolution of that corporation. In view of all these contingencies, which may arise in any case, we do not think it was contemplated by the statute that a claimant should be required to obtain personal service upon a nonresident defaulting, and, perhaps, defunct corporation before the former can be given any relief against the fund in the hands of the owner of the building constructed under the contract. It abundantly appears from this record that appellant could not obtain personal service upon the contrac-

tor, ana it is conceded upon all hands that respondent still held a portion of the contract price, and more than sufficient to pay appellant's claim. If, therefore, appellant may obtain relief under the statute, the mere fact that he did not obtain personal service upon the contractor does not stand in his way.

The question, however, next arises: Which one, the contractor or the surety company (which stands in the shoes of the contractor for the purposes of this case), is, for the purpose of claiming the fund, to be regarded as the contractor under the statute? It is not a case where, after a contractor had defaulted and abandoned his contract, a new contract is entered into with a different contractor. In this case the surety company became the *alter ego* of the contractor. In our judgment its relation to the contract and the contractor, in law, was akin to that of an assignee who assumes to perform the terms of a contract unconditionally in consideration of receiving the fruits thereof. The surety company stepped into the shoes of the contractor and did precisely what the latter had agreed to do—no more, no less—to comply with the precise terms and conditions of the contract. No new contract was entered into. No changes were made in the existing one, except that the surety company stepped into the shoes of the defaulting contractor. The surety company having thus succeeded to all of the rights and privileges provided for in the contract, it must also be deemed to have assumed all of its burdens imposed by the statute, so far, at least, as such burdens were a part of the thing which was to be accomplished under the contract. This, in our judgment, was the view entertained by the surety company when it wrote: "All payments specified in the Vondor-Horst contract shall be made to us (as) they become due, and we will settle with the contractor." Here we have a recognition of the legal principle that, although in strict compliance with the terms of the contract there may perhaps be nothing due the contractor from the respondent, yet, notwithstanding that fact, there may be something due or become due to it under the statute for materials fur-

nished or labor performed which the surety company appropriated to its own use and benefit, and which became a part of the building which it agreed to _erect and complete. By what is said by the surety company it is assumed, and we think correctly so, that, in view of the contractual relations existing between respondent and the contractor, there may have been no legal obligation on the part of the former to pay the latter anything, yet as between the surety company and the contractor the case might possibly be different. If, therefore, the surety company appropriated labor and materials furnished for the building in question, which materials and labor were not paid for, although obtained at the request of the contractor, why should it not be held that the surety company, under the peculiar facts of this case, must yield its claim to the fund as against all such materials and labor which it appropriated and used in the construction of the building? Why, in adjusting its claims against the contractor into the shoes of which it stepped, may it not receive credit for all such payments from it? If that is not the proper method of adjusting such claims, then it must follow that the surety company may recoup its losses, if any, by appropriating the labor and materials which were furnished to complete the contract but not paid for. Could anything be more glaringly unjust and inequitable, and would not such a course, if upheld, practically nullify the statute, and especially so in a case where the contractor is a foreign corporation which is wholly insolvent and defunct? The surety company having entered the arena in this action as a gladiator participating in the the struggle for the purpose of obtaining some of the spoils, it cannot now maintain the high ground of a mere sponsor for one of the parties, in which situation it had the right to insist upon a strict and exact compliance with all the conditions and provisions of the contract between respondent and the contractor. If it desired to maintain its advantage as surety or indemnitor, it should have permitted the respondent either to complete the building itself or readvertise for bids to complete the same. Whether, under the statute, respondent could legally have

completed the building without readvertising for bids over objection may well be doubted under the authorities. Upon that question, however, we express no opinion. See *City of Chicago v. Hanreddy,* 211 Ill. 30-33, 71 N. E. 834.

Assuming, however, that respondent had completed the building, the surety company would have been liable on its bond only for the excess over the contract price, if any, that respondent would have been compelled to pay to complete the building in accordance with the terms of the contract; and, if a new contract had been let, then for the difference, if any, between the contract price of the new contract and the old contract price, if the former was in excess of the latter. In the latter event the respondent would, under the statute, again have been required to obtain a new bond for the faithful performance of the second contract, and the surety company could safely have paid the difference, if any, as above indicated, and then would have been discharged from all obligations under its bond. If, however, new bids had been called for, there would have been an entirely new contract, and no doubt, under such circumstances, in view of the stipulations in the first contract, which would have been entirely abandoned by all the parties, the appellant's only remedy would have been against the contractor. In view of what was done, however, the contract in question was not abandoned at all, but was kept alive, and its terms and conditions were performed by the surety company instead of by the contractor. In performing them (that is, in constructing the building), the surety company appropriated and used materials and labor which had been obtained for the purpose of completing the contract, but which had not been paid for by the contractor. So long as the surety company merely sustained the relation of a surety, and so long as it claimed neither part nor share in the fruits arising out of the contract, it could say: "I am under no obligation to pay for materials or labor furnished my principal, since I did not undertake to do so." How can it now claim that no one can prefer any claim against the fund in the hands of respondent for labor and materials which the surety com-

pany appropriated to its own use, and which were used for
the purpose of completing the very contract which gives rise
to the fund in question? Why does not the claim of appel-
lant come squarely within the spirit, if not within the very
letter of section 1400x? We think that, so far as the fund
is concerned, under the statute, the claim of the surety com-
pany stands precisely the same as would the claim of the
contractor.

That the contract in question, under the circumstances,
was not abandoned is, we think, made quite clear in the fol-
lowing cases; *Murphy v. Buckman,* 66 N. Y. 297; *Craw-
ford v. Becker,* 13 Hun (N. Y.) 375; *Gillen v. Hubbard,*
2 Hilt. (N. Y.) 303.

If we pass now to a consideration of the case upon general
principles of law and equity, we again arrive at the conclu-
sion that the surety company, under the peculiar facts and
circumstances of this case, cannot successfully claim the en-
tire fund as against appellant's claim. While the law is well
settled that, under a contract and bond such as were entered
into between the contractor and respondent and between it
and the surety company, the latter was not liable on the
bond for any materials or labor not paid for by the contrac-
tor, although the same was used in the building, yet it seems
such is not the law where, as here, the bondsman steps into
the shoes of the defaulting contractor and assumes the per-
formance of the contract. The law in that regard is tersely,
and we think correctly, stated in 6 Cyc. 83, in the following
words:

"On default of the builder (contractor), in cases where the con-
tract requires him to pay for all labor and material furnished, a
right of action directly against the sureties accrues to unpaid
laborers, materialmen, and subcontractors; in the absence, how-
ever, of the provision the sureties are not liable, unless they have
completed the building on his default, and under an agreement with
him collected the price from the owner."

We have already called attention to the fact that the
surety company insisted that the whole contract price should
be paid to it. Such was done with the exception of the $4000

which is now held by respondent, and which is held by it for no other reason except to await the final result of this action. In view of the law as we have quoted it from Cyc., we again ask: Why should not appellant successfully invoke the aid of the court to obtain so much of the contract price as remained in the hands of respondent when this action was commenced and as shall be necessary to pay his claim in case it be found that the claim is reasonable and just? To limit the recovery of appellant to the amount still in the hands of respondent, under the statute, in no way conflicts with the rule that a surety is not liable for the debts of the contractor. So far as respondent is concerned, it has conceded the claim to be both reasonable and just, but, in view of the ruling of the district court in sustaining its demurrer, the surety company has not had the opportunity to test the reasonableness of appellant's claim against the fund.

This brings us to the last phase of this controversy. While it is true that we cannot, on this appeal, review the court's ruling on the demurrer, interposed by the surety company against the complaint filed against it and reverse the judgment upon that ground, yet in view that the court has proceeded and has made rulings that are clearly contrary to law, and in view that such rulings directly affect the judgment, and for that reason the same must be reversed, we may indicate our view of the law upon the questions involved. The court seems to have proceeded upon the theory that, before the appellant may make the surety company a party to this proceeding, he must set forth a cause of action such as will entitle him to a personal judgment against it, and the same theory was adopted with regard to respondent. If *Clore v. Johnson* (Ky.) 56 S. W. 5, shall be taken as an authority, then it seems appellant would be entitled to a judgment against the surety company. In that case the contractor, who had agreed to construct two houses, defaulted, and one of the materialmen then stepped in and undertook to complete the contract, just what the surety company undertook to do in this case, with the exception that the surety company here formally and expressly agreed to

comply with all the conditions of the contract. In completing the two houses, the materialman aforesaid made use of some of the material which had been furnished by a third party to the contractor, but which had not been paid for by the latter. The person whose material was so taken and used sued the materialman and recovered judgment against him for the value of such material. It is true that in that case, if the headnote alone is looked to, it would seem that the decision is based on the fact there stated that the person whose material was taken and used as aforesaid had notified the materialman not to use it without paying for it. When we look at the body of the decision, however, it is seen that the decision is not based upon any such narrow ground, but that it is held that the materialman was liable for the reasonable value of the material used by him because he had appropriated and used it in the completion of the buildings. If it be said that in the case at bar the material and labor furnished by appellant were furnished to the contractor, and that therefore he must look to the latter alone for payment, the same could have been said in the case just referred to.

The case does not proceed upon an express contract, but it proceeds upon one implied by law, which arises out of the fact that one has voluntarily assumed to complete a certain contract for his own protection, and in doing so has invaded the property rights of another, and the law thus provides a remedy. In the case at bar the surety company not only appropriated the material for its own benefit, and did so to complete the contract of another, but it did so with the express provision that it assumed to perform all the conditions of such contract. The surety company insisted upon receiving the fruits of such contract, and in return for this it also assumed all of the obligations and conditions arising out of the same. One of the conditions imposed by our statute upon such contracts was that the value or price of the material furnished by any one for the construction of a public building might be claimed by the person furnishing the material out of the contract price to be paid to the contractor. If the value of the material thus could have been withheld

out of the contract price as against the contractor, why not also as against the one who assumed to perform that very contract, and especially so as against one who claimed the entire fruits of such contract? In making the claim under the statute, appellant is not seeking a personal judgment against either respondent or the surety company. He therefore is not required to state a cause of action in the ordinary acceptation of the meaning of that term against either, such as would entitle him to a personal judgment. All that he is required to allege and prove against the surety company, as well as against respondent, is that a contract has been entered into between the respondent and the contractor for the construction of a public building; that he furnished labor and material for the contractor which was used in said building; that such labor and material have not been paid for, stating the value thereof and the amount claimed by him; that in the performance of said contract the contractor has defaulted, alleging the facts in that regard, and that the surety company has stepped into the shoes of the defaulting contractor for the purpose of completing the contract; that at the commencement of the action there was a portion of the contract price still in the hands of respondent, stating the amount thereof if he can, and that the surety company claimed some interest in the fund still in the hands of respondent, stating such interest. The foregoing, when stated in the legal form of pleadings generally, together with the necessary averments of inducement and other formal parts of a pleading, would seem to be entirely sufficient to invoke the power of the court to grant the relief prayed for under section 1400x. Of course issue can be joined on the foregoing allegations, or upon any one of them, and the court may then determine the truth with respect to such issue. In a case where personal judgment is sought against the contractor, the allegations as against him should be made sufficient for that purpose. In entertaining the view the district court did with respect to the law, it was utterly impossible for appellant to state a so-called cause of action against either respondent or the surety company. We are clearly of the

opinion that in taking such a view the district court erred, which error resulted in entering the judgment against appellant.

We remark that, at the hearing, respondent's counsel intimated that appellant could not recover because certain certificates which were to be issued by the architect in charge were not issued. There is nothing in this contention. Appellant does not sue on the contract, but his claim, if any he has, is based on section 1400x. We remark further that, in order to avoid all misconception respecting the scope of this decision, we desire to say that the relief here granted to appellant is based entirely upon the fact that the surety company in this case assumed and agreed to perform, and did perform, the contract entered into by its principal, and in such performance appropriated the material and labor furnished and rendered by the appellant in pursuance of the contract, and itself received the benefit of them, and thus stood in the shoes of the original contractor, its principal, at least to the extent of unpaid moneys in the hands of the school board due on the contract, and, in such respect, to some extent as though the original contractor, instead of its sureties, had performed the contract and constructed the building under its provisions.

In view of the conclusions reached by us, we have not deemed it necessary to allude to any other of the assignments of appellant. None of the errors alleged can arise again, and for that reason we need not refer to them specially.

Although this is an equity case where, under ordinary circumstances, we would be empowered to enter a judgment here, yet, in view that the suerty company has not had an opportunity to litigate the reasonableness of appellant's claim against the fund in question because it was not a party to the action, we deem it but fair and just to remand the cause.

The judgment or decree dismissing appellant's complaint is therefore reversed, and the cause is remanded to the district court of Salt Lake County, with directions to set aside its findings of fact and conclusions of law, to reinstate the

case, to permit appellant to make the surety company a party to this action by filing a proper complaint against it as in this opinion indicated, to proceed to hear the parties upon the questions and matters outlined in this opinion, and to proceed to a determination of the case in accordance with the views expressed herein. Appellant to recover costs.

McCARTY, C. J., and STRAUP, J., concur.