SOUTH HIGH SCHOOL DIST. OF SUMMIT COUNTY v. McMILLAN PAPER & SUPPLY CO. *ET AL.*

No. 3041.   Decided April 19, 1917.   (164 Pac. 1041.)

1. ASSIGNMENTS—RIGHTS ACQUIRED BY ASSIGNMENT. An assignee of a mere chose in action takes only the rights the assignor had therein.   (Page 486.)

2. SCHOOLS AND SCHOOL DISTRICTS—RIGHTS OF LABORERS AND MATERIALMEN—ASSIGNMENTS—"LIEN." Comp. Laws 1907, Section 1400x, provides that any person who has done work or furnished materials to any principal contractor for the construction or repair of any public work for any school district, etc., may sue the contractor and the school district, and that the court may render judgment against the school district for the amount due from it to the contractor or for a sufficient amount to pay the judgment recovered against the contractor. *Held* that, while the statute does not use the word "lien" and does not require any notice or affidavit to perfect the lien, it gives a preferential right against the contract price to laborers and materialmen bringing an action or intervening in some other action while such price remains in the hands of the school district, and an assignee of moneys due or to become due under the contract take subject to such preferential right.   (Page 486.)

3. SCHOOLS AND SCHOOL DISTRICTS—RIGHTS OF LABORERS AND MATERIALMEN. To enforce their preferential right to moneys due a

contractor from a school district under Comp. Laws 1907, Section 1400x, it is not necessary for laborers and materialmen to bring separate actions, and they may set up their claims in any pending action in which the fund is in question or intervene in any action brought by one of their number.   (Page 491.)

4.   SCHOOLS AND SCHOOL DISTRICTS—CONSTRUCTION CONTRACTS—FAILURE TO TAKE BOND—LIABILITY.   Under Laws 1909, c. 68, providing that any person contracting with any school district, etc., for the construction of any public building or public work shall be required to execute a bond for the performance of the work and with the additional obligation that the contractor shall pay all persons supplying labor and material, the failure of a school district to require such a bond from a contractor did not render it liable to one to whom the contractor assigned moneys due under the contract and whose right to such moneys was made subordinate to claims for labor and materials; as the bond provided for was not intended for its benefit.   (Page 492.)

Appeal from District Court, Third District; *Hon. T. D. Lewis,* Judge.

Action by the South High School District of Summit County, against the McMillan Paper & Supply Co. and others.

From the judgment the defendant Kamas State Bank appeals.

AFFIRMED.

*Stewart, Stewart & Alexander* for appellant.

*Smith & McBroom* for respondent South High School Dist.

*Jas. A. Stump, Stephens & Smith, James Ingebretsen, Stewart, Bowman, Morris & Callister, Van Cott, Allison & Riter, Geo. H. Smith* and *A. B. Robertson* for other respondents.

FRICK, C. J.

The real controversy in this action is between the Kamas State Bank, hereinafter called appellant, and the claimants who assert claims against the South high school district of Summit county, hereinafter designated plaintiff, for labor performed and material furnished to Mortensen & King, a co-

partnership, hereinafter styled contractors, who had entered into a contract to construct a high school building for the plaintiff.

The pleadings cover 115 pages of the printed abstract, and hence are too voluminous to be inserted here, even in condensed form. The findings of the court are, however, quite full and sufficiently reflect the issues covered by the pleadings. We shall, however, supplement the findings in the course of the opinion on such matters as may require further elucidation to give the reader a clear understanding of the points decided.

After the Rio Grande Lumber Company, which claimed a balance due it for materials furnished the contractors for said high school building, had commenced an action pursuant to Comp. Laws 1907, section 1400x, to which we shall more particularly refer hereinafter, the plaintiff commenced this action in which it prayed that all of those who asserted claims for labor performed and materials furnished said contractors, or who claimed some interest in the money due to the contractors, be required to appear in the action and set forth their claims. Accordingly all of those who asserted claims against the contractors, including said Rio Grande Lumber Company and the appellant, interpleaded in this action and set forth their claims.

The appellant, who claimed to be the assignee of the contractors, as will hereinafter more fully appear, appeared and set forth its claim against the contractors and against the plaintiff to recover so much of the contract price as it alleged was owing by said contractors to the appellant.

The cause was tried to the court without the intervention of a jury, and there is practically no dispute with regard to the salient facts, which are reflected in the findings, and which, in substance, are: That on the 6th day of August, 1914, the plaintiff entered into a written contract with said contractors in which they agreed to furnish all the labor and materials necessary to construct and complete a certain high school building for the plaintiff at Kamas, Summit county, Utah, for the sum of $20,913; that the plaintiff, in addition to certain moneys paid out to complete the high school building,

paid on said contract the sum of $16,391.15, leaving a balance due and unpaid thereon of $4,551.85, which sum had been earned and became due on said contract "on or about the 1st day of December, 1914"; that said contractors, at the time of entering into said contract, also delivered to the plaintiff an undertaking, or bond, conditioned for the faithful performance of the terms and conditions of said contract, but that said contractors did not furnish the statutory bond to promptly pay for all labor and materials furnished for said high school building; that said contractors have not paid, and they are wholly unable to pay, and have no means with which to satisfy said claims for labor and materials furnished for the construction of said high school building, nor to pay the claim asserted by appellant under its assignment, which is hereinafter referred to, except from said sum of $4,551.85, due on said contract; that the several claimants who are parties to this action performed labor or furnished materials, or both, at the special instance and request of said contractors, all of which were used in the construction of said high school building; that the value of the labor performed and the materials furnished as aforesaid (stating the amount due each claimant) in the aggregate amounted to the sum of $3,699.69; that no part thereof has been paid; that the claimant the Rio Grande Lumber Company commenced its action pursuant to Comp. Laws 1907, section 1400x, and all the other labor and material claimants also base their claims upon said section; that on the 7th day of August, the day after entering into the contract to erect the high school building, the contractors, in order to obtain credit and a checking account at the appellant bank, executed and delivered to said bank two promissory notes, one for $3,000, and one for $500, and to secure the payment thereof executed and delivered to the appellant bank an assignment of all moneys due or to become due under the contract aforesaid, which contract was made a part of said assignment; that in reliance upon said assignment appellant placed to the credit of said contractors in its bank the sum of $3,500, evidenced by said promissory notes; that notice of said assignment was duly given to the clerk of the plaintiff, but no notice thereof was ever given to the labor and material claimants;

that in addition to said $3,500 the contractors also, from time to time, received payments on said contract aggregating the sum of $16,249.67, all of which, together with said $3,500, was paid by appellant on checks drawn by said contractors, or by one of them; that the sum of $2,900 of said amount was checked out and paid on the personal account of one of said contractors; "that said bank did not supervise, direct or control the said Mortensen & King, J. P. Mortensen and C. E. King, in drawing the funds in said bank account, but said parties and each of them, were allowed to draw upon said account at their pleasure;" that the promissory notes executed by said contractors to appellants are due, and that on or about December 1, 1914, it demanded payment of the amount due from plaintiff to the contractors out of said $4,551.85, all of which was in plaintiff's possession at said time; that about the time that "the balance as earned by the contractors upon said construction contract was ascertained by the plaintiff, and before the same was payable, the plaintiff received notice from the American Surety Company, the surety upon the undertaking furnished by said contractors, that the said several accounts for labor and material specified in paragraph 5 of the findings of fact herein were unpaid, and that any sum remaining in the hands of the plaintiff should be withheld pending the payment of said accounts or to be used in the payment thereof, and at the same time the plaintiff became advised that claims might be asserted that the plaintiff was liable to the said several laborers and materialmen on account of the failure of the plaintiff to exact an undertaking from the contractors expressly conditioned for the payment of persons supplying labor and materials to be used in the prosecution of the work provided for in said contract; that on account of receiving notice of said unpaid claims and of claims to which the plaintiff might become liable, the plaintiff at once set aside the said balance remaining of the said contract price, to wit, the sum of $4,551.85, and has ever since retained the same for judicial determination as to the rights of the respective parties to this suit to payment thereof or therefrom; that in open court the plaintiff through and by its attorneys represented to the court that the plaintiff was

willing and believed it would be in the interest of justice and conform to the terms of the construction contract, and accord with the rights and equities of the parties to apply the balance of the contract price to the payment of the claims of the laborers and materialmen as specified in paragraph 5 of these findings, provided this could be done without subjecting the plaintiff to any individual liability to any of the other parties to the suit; that the sum of $3,500 advanced by said bank to said Mortensen & King, evidenced by said promissory notes, was placed by said bank to the credit of said Mortensen & King, in said bank, and that said bank did not supervise, direct, or control the paying out of said $3,500 by said Mortensen & King; that this court is unable to determine from the evidence how much of said sum of $3,500 was paid out by said Mortensen & King for labor performed and materials actually used in the construction of said high school building.''

Upon those findings the court made conclusions of law wherein it found that the claims of those who had performed labor or furnished materials, or both, were superior to the claims of the appellant as assignee, and entered judgment in favor of the claimants authorizing payment of their claims in full out of the balance found due on said contract as aforesaid, and also entered judgment in favor of appellant for the amount due it on said promissory notes, but made that judgment subject to the claims of those who performed labor or furnished materials, or both, to said contractors for said high school building.

The assignment from the contractors to appellant reads as follows:

"Know all men by these presents that we, J. P. Mortensen and C. E. King, copartners doing business under the firm name and style of Mortensen & King, for value received, do hereby sell, assign, transfer, and set over to the Kamas State Bank all payments and sums now earned or due or that may hereafter be earned or become due to us under the provisions of a certain contract bearing date August 6, 1914, between the undersigned and South high school district, Summit county, Utah, a copy of which said contract is hereto attached

and marked Exhibit 'A,' wherein and whereby the said undersigned agree to furnish and pay for all materials and labor required in the erection and completion of the proposed high school building to be erected at Kamas, Utah, according to plans, drawings, details, and specifications made and prepared by Scott & Welch, architects and engineers. And we hereby authorize and direct the said South high school district to pay all amounts and sums to said Kamas State Bank as rapidly as the same become due under the provisions of said contract.

"This assignment is made as collateral to secure the ———— payment of all sums now due by us or either of us, as well as by the partnership of Mortensen & King, and also to secure all indebtedness which we or either of us or said partnership may hereafter owe Kamas State Bank for money hereafter advanced by it to us or said partnership, as well also as by reason of any matter or thing whatsoever."

The portions of the contract which are deemed material to this controversy are as follows:

"The contractors shall and will provide all the materials and perform all the work for the erection and completion of a two-story high school building, except plumbing, heating, located at Kamas, Utah, as shown on the drawings and described in the specifications. * * * It is hereby mutually agreed between the parties hereto that the sum to be paid by the owners to the contractors for said work and materials shall be twenty thousand nine hundred thirteen dollars ($20,-913), subject to additions and deductions as hereinbefore provided, and that such sum shall be paid by the owners to the contractors, in current funds, and only upon certificates of the architect, as follows: Payment to be made upon eighty per cent. (80%) of the work in place on September 5, 1914, October 5, 1914, and November 5, 1914, upon receipt of receipted bills in duplicate for materials and signed pay rolls for labor. The final payment shall be made within thirty days after the completion of the work included in this contract, and all payments shall be due when certificates for the same are issued. If at any time there shall be evidence of any lien or claim for which, if established, the owners of

the said premises might become liable, and which is chargeable to the contractors, the owners shall have the right to retain out of any payment then due or thereafter to become due an amount sufficient to completely indemnify them against such lien or claim. Should there prove to be any such claim after all payments are made, the contractors shall refund to the owners all moneys that the latter may be compelled to pay in discharging any lien on said premises made obligatory in consequence of the contractors' default.''

In view that the claims of those who performed labor or furnished materials for the construction of the high school building are based upon Comp. Laws 1907, Section 1400x, we append that section in full:

''Any person, partnership, or corporation who has done work or labor or furnished materials to any principal contractor for the construction or repair of any public work of any character for any county, town, city, village, or school district, may maintain an action therefor in the county in which such work, labor, or materials were done or furnished, against such principal contractor and such county, town, city, village, or school district, jointly, for the recovery thereof; but no judgment shall be rendered against any defendant therein, other than such principal contractor, for any amount greater than the amount due from it to such principal contractor at the time of the commencement of such action. Such county, town, city, village, or school district, when served with the summons in any such action, may give notice thereof to such principal contractor, and on so doing need not further defend such action. On rendition of judgment in such action against such principal contractor, the court may also render judgment against such county, town, city, village, or school district for the amount due from it to such principal contractor at the time of the commencement of such action, or for a sufficient amount to pay the judgment recovered against the principal contractor, and payment thereof shall discharge its indebtedness to such principal contractor, to the amount so paid: Provided, that costs shall not be taxed against such county, town, city, village, or school district. Such principal contractor may, in such action, file in the

court in which such action is commenced a bond, in such sum and with such sureties as the judge of such court shall approve, conditioned for the payment of any judgment that may be recovered in such action, and thereupon the liability of such county, town, city, village, or school district hereunder shall cease, and the action as to it shall be discontinued without costs to it.''

There is another statute (chapter 68, Laws Utah 1909, p. 115) which_is discussed by counsel, and in view that it has a bearing on some of the phases of this controversy we copy the material parts, which are as follows:

''Any person or persons entering into a formal contract with the state, any state institution, county, city, town, village, or school district, for the construction of any public building, or the prosecution and completion of any public work or improvement, or for repairs upon any public building, public work or improvement, shall be required before commencing such work to execute a penal bond, with good and sufficient surety or sureties, for the faithful performance of said contract, with the additional obligation that such contractor or contractors shall promptly make payment to all persons supplying labor and material used in the prosecution of the work provided for in such contract; and any person, company, association or corporation who has furnished labor or material used in the construction or repair of any public building, public work or improvement, payment for which has not been made, shall have the right to intervene and be made a party to any action instituted by the obligee on the bond of the contractor, and to have their rights and claims adjudicated in such action and judgment rendered thereon, subject, however, to the priority of the claim and judgment of the obligee therein.''

Appellant assails some of the findings of the court as not being supported by the evidence. As before stated, there is little, if any, dispute concerning the salient facts, and the findings of fact made by the court are all supported by the evidence. Appellant's counsel in their assignments of error, however, also vigorously assail the conclusions of law and judgment, and the real questions for decision arise upon those assignments.

486 SUPREME COURT OF UTAH. [April

South High School Dist. v. McMillan P. & S. Co. et al., 49 Utah 477.

As already pointed out, notwithstanding the fact that appellant had obtained an assignment of the contract price from the contractors, the district court nevertheless held that the claims of those who performed labor or furnished material to the contractors to complete the high school building were superior to the claims of appellant and its assignees. It is contended by appellant's counsel that the holding of the court in that regard is clearly erroneous. They contend that appellant's assignment takes precedence over all other claims due the contractors upon the contract with the plaintiff. Upon the other hand, counsel representing those who performed labor or furnished material to the contractors to complete the high school building insist that, in view of Section 1400x, *supra*, and of Chapter 68, aforesaid, when considered in connection with the provisions of the contract between the plaintiff and the contractors and the terms of the assignment from the latter to appellant, the rights of their clients to the balance due the contractors are paramount, and that therefore the judgment of the district court should be affirmed. The question to be determined therefore is: Which view should prevail?

It is elementary that the assignee of a mere chose in action takes precisely what rights the assignor had ·1 therein, no more, no less. The law upon that subject is well stated in 5 C. J. 962, in the following words:

"The assignee acquires by reason of the assignment no greater rights against the debtor than those of the assignor against the debtor at the time of notice to him. The rights of the assignee are subject to the performance of the conditions by which the assignor was bound, even where the assignment was with the consent of the debtor, or was accepted by him."

It is likewise elementary that the assignment is subject to any statutory provision which may affect the thing assigned, or which creates rights therein to third persons, and in that way may affect the right of the assignor to assign, and of the assignor to receive the subject-matter of the assignment. In other words, the existing law must always be **2** considered in determining the rights of both the as-

signor and the assignee.  In the case at bar the provisions
of Section 1400x must therefore be considered in determining
the right of the assignor to make the assignment of the con-
tract price or the money due or to become due him upon the
contract for the erection of the building or structure men-
tioned in said Section 1400x.  This court, in referring to
Section 1400x, has said that:

It is "highly remedial, and must thus, in furtherance of justice,
receive a liberal construction and application so as to accomplish its
real object and purpose." *Mellen* v. *Vondor-Horst Bros.*, 44 Utah
300, 140 Pac. 130.

It was there further held that:

Under Section 1400x "any person who has furnished any materials
or has performed any labor for such contractor for the construction
of such building may, at any time before the contract price has
been fully paid, bring an action setting forth the foregoing facts,
and, if anything is due from such contractor to such person for
such materials or labor, the latter may obtain pay directly from the
fund held by the public corporation for which the building is con-
structed to the extent that there is anything in the hands of such
corporation which is due on the contract.  Under the statute, where
the contract is conceded, the only two questions to be determined are:
(1) Is there anything due by the contractor to the claimant for
materials furnished or labor performed for the construction of the
public building or structure? and (2) Was there any part of the
contract price in the hands of the public corporation at the com-
mencement of such action which is to be paid on the contract?"

Notwithstanding what we said in the Mellen Case, counsel
nevertheless contend that, in view that a lien is not expressly
mentioned in Section 1400x, therefore none exists in favor
of those who have performed labor or furnished material
for a public building.  While it is true that the word "lien"
is not expressly mentioned in that section, yet it is equally
true that a preferential right is there given which is tanta-
mount to a lien.  Speaking of legal liens the author in 1 Jones
on Liens (2d Ed.), Section 4, says:

"A lien at law is an implied obligation whereby property is bound
for the discharge of some debt or acknowledgment.  It is not the
result of an express contract; it is given by implication of law."

See, also, same volume, Sections 104, 105.

488 SUPREME COURT OF UTAH. [April

South High School Dist. v. McMillan P. & S. Co. et al., 49 Utah 477.

In 5 Words and Phrases, 4145, it is said:

"The word 'lien' is of the same origin as the word 'liable,' and the right of a lien expresses the liability of certain property for a certain legal debt, or a right to resort to it in order to enforce the debt."

It is not necessary to multiply definitions, since it is manifest that by Section 1400x a preferential right (the equivalent of a lien) to a certain fund while it remains in the hands of a public corporation is clearly intended for, and is as clearly given to, all laborers who have performed labor and all materialmen who furnished material for a contractor who constructs a public building. The mere fact that no preliminary notice or affidavit is required to be given and filed in some public office in order to perfect the lien constitutes no objection to the lien or preferential right there given. No such notice or affidavit is required in order to enforce the preferential rights given in Comp. Laws 1907, Section 1344, as amended by Chapter 24, Laws Utah 1913, p. 26, by which the claims for wages due laborers are given preference over all other claims. The same is true of Comp. Laws 1907, Section 85, as amended by Chapter 23, Laws Utah 1913, p. 26, where wages are preferred in case of general assignments. All of said claims are in the nature of special preferred rights or liens and may be enforced as indicated in the statutes creating them. Under Section 1400x preferential rights exist by virtue of the statute, and nothing is required from the laborer or materialman, except to bring the action mentioned in said section to enforce the right. It is not the action, however, that creates the preferential right. The right exists independently of the action. The action is merely to enforce the right; that is, to compel payment of the fund and to discharge the public corporation from liability to the contractor to the extent that the fund is appropriated for the payment of laborers' and materialmen's claims. The only requirement imposed by the statute is that the action be commenced while the contract price, or a part thereof, remains in the hands of the public corporation. In some states having similar provisions the action is required to be brought within a certain limited time. Where, therefore, preferential rights are so

plainly given by the statute as is the case in Section 1400x, those rights should not be frittered away by the courts by placing needless restrictions upon the enforcement thereof. In case an action is commenced pursuant to Section 1400x, or whether the claim is preferred in some other action, as before stated, the contractor may obtain the money by giving the bond provided for in that section; and while the question is not directly presented, and for that reason we do not decide it; yet it is probably also true that the contractor may also relieve the fund from the operation of Section 1400x by executing the bond for the benefit of laborers and materialmen that is provided for in Chapter 68, *supra*. Moreover, if Section 1400x is not given the meaning and effect hereinbefore stated, it would afford those who perform labor or furnish material for a public building no remedy beyond what they already had when that section was adopted under Comp. Laws 1907, Section 3090, as both those who performed labor for or furnished material to the contractor always had the right to commence an action against him whether he had a contract to construct a public or a private building, and could attach the contract price by process of garnishment while in the hands of the owner of the building, or, in case of a public building, could attach the same while in the hands of the public corporation, and thus compel the garnishee to pay them instead of the contractor. Under those statutes, however, the contractor could always prevent the laborer or materialman from enforcing his claim by that method by assigning the proceeds arising from the contract to third persons, as was done in this case. We must therefore assume that Section 1400x was enacted for some salutary purpose. Its obvious purpose, and one that is thoroughly just and practical, is to give laborers and materialmen who are not permitted by our statute to acquire mechanics' liens against public buildings an adequate and speedy remedy against a contractor who has agreed to construct a public building and has obligated himself to furnish and pay for all labor and material necessary to complete such building. Moreover, if it was not the purpose of the Legislature in adopting Section 1400x to prevent the assignment of the contract price as against the

claims of laborers and materialmen, then, for the reasons before stated, it has no apparent purpose, since, if a contractor may still assign or dispose of the contract price at any time at will, nothing was accomplished by its adoption. If, however, Section 1400x is given the meaning and effect we have given it in the *Mellen Case, supra,* and are giving it here, then it accomplishes precisely what, in our judgment, the Legislature intended it should accomplish, namely, to prevent the contractor from disposing of, or from in any way incumbering, the contract price to the prejudice of those who have performed labor or furnished material to complete the contract while all, or any part of, said contract price remains in the hands of the public corporation for which the building or structure was erected. True, as pointed out, the contractor may, by giving the bond before suggested, release the money so that he may dispose of it at will, but unless he complies with the law in that regard, he may not dispose of the contract price so long as it remains in the hands of the public corporation. Such, therefore, was the law when the assignment in question was made by the contractor to appellant. Both appellant and the contractor were bound by the law, and the assignment was given and received subject thereto.

As against the claims of the laborers and materialmen, the contractors, therefore, could not assign the contract price while it remained in the hands of the plaintiff, except such portion as might be in excess of the claims of the laborers and materialmen, or unless the contractors executed the bond we have referred to.

As we have seen from the quotation from 5 C. J., *supra,* the appellant, as assignee, could acquire no greater rights in or to the contract price than the contractors had, and in view that they could not assign the same to the prejudice of the laborers and materialmen, then appellant, as against their claims, acquired no right in or to the contract price except to the excess after the claims aforesaid are fully satisfied. No doubt, if the laborers and materialmen had not commenced the action provided for in Section 1400x, or had intervened in some other action and had claimed the contract price, while the same, or a part thereof, remained in the hands of

the plaintiff, they would be deemed to have waived their rights to the fund, and appellant would then have been entitled to the same. An assignment from the contractor to a third person is therefore not void as between the parties; nor is it void as against the laborers and materialmen unless they commence the action contemplated by Section 1400x, and then the assignment is without force only to the extent of the amount necessary to satisfy the claims of the laborers and materialmen. Such an assignment is therefore not void, but, by reason of the provisions of Section 1400x, it is merely subject to the claims of laborers and materialmen in case such claims are sought to be enforced as provided in said section.

While in this case not all of the labor and material claimants commenced separate actions, yet they all  **3** have set forth their claims pursuant to Section 1400x in plaintiff's action, and did so before the contract price was paid to the contractors by the plaintiff. As we construe that section, it is not absolutely essential that each claimant bring a separate action, and thus fritter away a large portion of the fund in court costs. We think that he may appear in any pending action in which the fund is in question, and may therein set up his claim, or one of the claimants may bring an action, and all or any number of them may intervene in that action and enforce their rights. In pursuing either method the provisions of the statute are substantially complied with, and no prejudice can result to any one.

We have refrained from discussing the other reasons, equitable and otherwise, argued by counsel, why the assignment in this case should not prevail as against the laborers and materialmen for the reason that we prefer to base this decision squarely upon the statutes of this state as we understand them, and thus avoid any misunderstanding respecting the scope and effect of this decision respecting the claims of laborers and materialmen against contractors who have bound themselves to construct public buildings and to furnish and pay for all the labor and material required to complete such buildings. While counsel have not cited any case precisely in point, and by an independent search we have been unable to find any such case, yet the following cases will be found to fully sustain

the principles we have invoked in arriving at the foregoing conclusions: *Burr* v. *Massachusetts School for Feeble-Minded*, 197 Mass. 357, 83 N. E. 883; *Union Pacific Ry. Co.* v. *Douglas County Bank*, 42 Neb. 469, 60 N. W. 886; *Mechanics', etc., Bank* v. *Mayor*, 58 How. Prac. (N. Y.) 207; *Independent School District* v. *Mardis*, 106 Iowa 295, 76 N. W. 794. While many more cases are cited by counsel, and no doubt in at least some of them the decisions are based upon the same principles, yet the foregoing are ample to illustrate the principle we have attempted to apply in this case. In *Union Pac. Ry. Co.* v. *Douglas County Bank, supra*, the Supreme Court of Nebraska applied the doctrine we have herein announced respecting the rights of the contractor to assign the proceeds arising from a contract wherein he had agreed to pay for the labor necessary to perform the same. The court there held, purely upon equitable grounds, that, entirely independent of the statute, the assignee, who had had knowledge of the provisions of the contract that the contractor was bound to pay the laborers, took the assignment subject to the stipulations of the contract and subject to the rights of the labor claimants. We need not go to that extent here, since the provisions of Section 1400x make such assignments subject to the rights of both the laborers and materialmen who have performed labor or furnished material, or both, to the contractor, to complete his contract to erect a public building.

Appellant's counsel, however, also insist that the district court erred in not holding the plaintiff liable upon the ground that it had failed to require the contractors to       4 execute the bond provided for in chapter 68, *supra*. It is manifest, however, that the bond there provided for was not intended for the benefit of the appellant, and hence it cannot complain that it was not given. That such is the law is clearly held in *United States, etc., Co.* v. *Rundle*, 107 Fed. 227, 46 C. C. A. 251, 52 L. R. A. 505.

It is further contended that, inasmuch as the appellant advanced money to the contractors with which to pay for labor performed and material furnished in the construction of plaintiff's school building, for that reason appellant should be subrogated to the rights of the laborers and materialmen to

the extent that the fund provided by it paid for labor and material. The District Court ruled that the rights of subrogation did not apply in this case. In that ruling we fully concur with the District Court. Under the facts and circumstances of this case the doctrine of subrogation cannot be given application. We have held that appellant's assignment was subject to the rights of the claimants for labor and material. If it were now held that it should nevertheless obtain the fund under the doctrine of subrogation it would merely nullify the holding that the claims for labor and material were paramount to the rights of the assignee. There are other reasons why the doctrine of subrogation cannot be applied in this case, but it is not necessary to enlarge upon them. The foregoing sufficiently covers all the assignments.

The judgment of the District Court is therefore affirmed, with costs.

McCARTY and CORFMAN, JJ., concur.