## IN RE BOMBINO, et al.

No. 2514.   Decided February 2, 1914 (138 Pac. 1155).

1. BANKRUPTCY—EFFECT ON STATE—INSOLVENCY LAWS—ADMINIS-
TRATION AND ALLOWANCES TO ASSIGNEE.  Where an assignment
for the benefit of creditors is made within four months prior
to the assignor's adjudication in bankruptcy, all the state court
can do is to preserve and protect the property to be adminis-
tered upon by the bankruptcy court, and it cannot thereafter
allow any claim for services to any one, except such as may
in good faith have been rendered before proceedings in bank-
ruptcy were commenced.  Claims thereafter arising should be
presented to and passed on by the bankruptcy court in accord-
ance with the provisions of the bankruptcy act (Act July 1,
1898, ch. 541, 30 Stat. 544 [U. S. Comp. St. 1901, p. 3418]).
(Page 145.)

2. BANKRUPTCY—ALLOWANCES UNDER STATE INSOLVENCY LAWS—EF-
FECT OF CREDITORS' CONSENT.  Although bankruptcy proceedings
may have been instituted within four months after an assign-
ment for benefit of creditors, yet if creditors, without objec-
tion, permit the state court to administer the estate, they will
ordinarily not be heard to complain respecting the allowances
made by it.   (Page 146.)

3. BANKRUPTCY—EFFECT OF ADJUDICATION UPON ASSIGNMENT FOR
CREDITORS.  An assignee for benefit of creditors is charged with
knowledge that he is acting under an instrument which in
and of itself constitutes an act of bankruptcy, and that if his
assignor, in bankruptcy proceedings commenced within four
months of the assignment, is adjudicated a bankrupt, he will
hold the assigned estate merely for the use and benefit of the
bankrupt's creditors, to be administered in the bankruptcy
court.   (Page 148.)

4. BANKRUPTCY—ALLOWANCES BY STATE COURT.  The state court
may make allowances for compensation for services rendered
under an assignment for the benefit of creditors, before bank-
ruptcy proceedings against the assignor were instituted, if a
claim therefor is presented before adjudication of bankruptcy.
(Page 148.)

APPEAL from District Court, Third District; *Hon. C. W.
Morse,* Judge.

In the matter of the assignment of V. and G. Bombino for the benefit of creditors. From the allowance of certain amounts to the assignee, certain creditors appeal.

REVERSED AND REMANDED, WITH DIRECTIONS.

*C. S. Patterson,* and *Hurd & Hurd* for the creditors.

*King & King* for the assignee.

FRICK, J.

This is an appeal by certain creditors of said Bombinos, doing business as Bombino Bros., from an order or judgment of the district court of Salt Lake County in which certain allowances were made to one Raymond Ray, as the assignee of said Bombino Brothers, and for fees paid to an accountant, and for attorneys' fees for services rendered for said assignee by said accountant and by his attorneys, Messrs. King & King.

The facts, in brief, are as follows:

On the 6th day of February, 1912, the said V. and G. Bombino, as Bombino Bros., made a general assignment of all of their property, under our statute, to said Raymond Ray, for the benefit of their creditors. The assignee immediately took possession of the business and property of said assignors, consisting of a saloon, a rooming house, and a grocery store, including the furniture, merchandise, and other property connected therewith. The assignee filed an inventory on the 10th day of February, 1912, showing the entire assets of the assignors to be of the value of $15,293.10, which value, through errors and corrections, was subsequently reduced to $11,628.42; and liabilities were shown to be $7316.45. On the 15th day of February, 1912, the assignee filed an affidavit from which it was made to appear that it was for the best interests of all concerned that the business theretofore carried on by the assignors be continued, and, in order to do so, he asked permission from said district court to purchase the necessary goods from day to day for the

purpose of continuing said business. The court granted such permission, and the business was conducted by the assignee. On the 24th day of February, 1912, or eighteen days after the assignment was made, and within fourteen days after the assignment proceedings had been filed in the district court of Salt Lake County under our statute, a petition in bankruptcy was duly filed against said Bombino Bros., the assignors, in the District Court of the United States in and for the District of Utah, and said assignors were duly adjudged bankrupts and a trustee in bankruptcy was duly appointed. The precise date on which the order or judgment adjudging them bankrupts was entered is not disclosed by the record. It seems that the assignee conducted the business until some time in May following, when he filed his report and application for discharge in the district court aforesaid. In the report he, among other things, showed that his assignors had been adjudged bankrupts, and that he had realized from the sale of merchandise the sum of $2791.95; that he had collected upon the outstanding accounts the sum of $402.56, and from property sold in bulk he had realized the sum of $530, all of which aggregated $3724.51. He also reported that he had paid the accountant the sum of $125 and to himself the sum of $368, and had otherwise expended the sum of $2156.55, leaving in his hands an unexpended balance of $1074.96, out of which sum he asked for further allowances as follows: An additional allowance for the accountant of $242.19, for himself, $205.28, and for attorneys' fees the sum of $350, making the whole amount asked for extra allowances the sum of $797.47, which would leave a balance of $277.49 in his hands. On the 25th day of May, 1912, said district court, without any notice to the creditors of any kind, made an order approving all of the acts and doings of the assignee, and also made a further order in which he was allowed to retain the amount he had paid to the accountant, also what he had paid to himself, and he was further allowed to pay to the accountant, to himself, and to his attorneys the amount of $797.47, apportioned as aforesaid out of said

$1074.96 which he had on hand. The creditors, who are appellants here, subsequently appeared in said court and moved to set aside the order and judgment aforesaid upon the ground that no notice of any kind had been given to any one, and for that reason they could not and did not appear at the time the order was made to enter their objections to the allowances aforesaid. The district court set aside the order making the allowances and granted the objecting creditors a hearing. After the order had been set aside, the creditors, through their counsel, in effect entered an objection to the jurisdiction or power of the district court of Salt Lake County to hear and determine the question of allowing further compensation to the assignee and his attorneys and to the accountant, for the reason that the assignors had been adjudged bankrupts in the District Court of the United States in and for the District of Utah, and that the bankrupt estate could only be administered in the latter court. The district court of Salt Lake County promptly overruled the objection, and then reaffirmed and re-entered his former order making the allowances aforesaid.

The only question we can pass on is whether the district court exceeded its power in making the allowances.

There is a great diversity of opinion among the numerous federal District Courts and the state courts respecting the precise limit of power of the state courts with regard to dealing with the assigned property in case a common-law or statutory assignment is made by an insolvent debtor for the benefit of his creditors, where such insolvent subsequently, and within four months from the date of the assignment, is adjudged a bankrupt. Indeed, if one is not careful with regard to the facts and circumstances of the particular case referred to, and loses sight of the real purpose of Congress in passing the bankruptcy act, the many and apparently conflicting decisions may become really bewildering. As we view it, however, there should not be much difficulty in finding a limit beyond which the state courts cannot go in attempting to administer upon a bankrupt estate, although an assignment was made for the benefit of creditors before bankruptcy pro-

ceedings were instituted. The very act of making an assignment in and of itself may constitute an act of bankruptcy under the bankruptcy act, and hence, if, within four months from the date of the assignment, bankruptcy proceedings are instituted and the insolvent is adjudged to be a bankrupt, it seems that the bankruptcy court, and no other, is given the power to administer upon and distribute the bankrupt estate If this be not so, then the bankruptcy act can be made nugatory by a state court by proceeding to administer and distribute the estate of the insolvent in accordance with the state insolvent laws which distribution may be in direct conflict with the provisions of the bankruptcy act. For instance: Under our assignment law a debtor may prefer one of his creditors, while such may not be done under the bankruptcy act. A state court might thus seriously invade the rights of some of the bankrupt's creditors.

We are of the opinion, therefore, that, in case an assignment for the benefit of creditors is made, and thereafter, and within four months from the assignment, a petition in bankruptcy is filed upon which the assignor is adjudged a bankrupt, all the state court can do is to preserve and protect the property to be administered upon by the bankruptcy court, and the state court thereafter is powerless to allow any claim for services in favor of any one except such as may in good faith have been rendered before proceedings in bankruptcy were commenced. All claims arising thereafter, of whatever kind or nature, should be presented to and passed on by the bankruptcy court and in accordance with the provisions of the bankruptcy act. We think such is the law as it is declared to be in the best considered cases. It also is in accordance with both the letter and the spirit of the bankruptcy act.

In 1 Loveland on Bankruptcy (4th Ed.) section 38, the author in discussing the "Jurisdiction of Property Assigned for the Benefit of Creditors," says:

"If proceedings in bankruptcy are instituted within four months after a general assignment and followed by an adjudication, the

44 Utah—10

court of bankruptcy is entitled to administer the estate, and the jurisdiction of the state court must yield to the paramount authority of the bankruptcy court."

It is also said in the same section:

"If no bankruptcy proceedings are instituted within four months, the state court may proceed to administer the estate, and the proceeding cannot be assailed by a trustee in bankruptcy subsequently appointed, or by creditors."

It is also true that, although bankruptcy proceedings may have been instituted within four months, yet if the creditors, without any objection, permit the state court to administer the estate, or if they consent that it may do so, they will ordinarily not be heard to complain respecting the allowances made by the state court, although, if timely objection had been made, the allowances made would not have been permitted to stand. It is in cases where the creditors have either expressly or by implication consented that the state court may proceed with the administration of the bankrupt estate that the great diversity of opinion with respect to allowances arises. In the case at bar, as we have seen, the creditors, at the first opportunity, objected to the power of the state court to appropriate the assets of the bankrupt estate for the purposes for which it was done. We think the court should have heeded and sustained the objection; and that it exceeded its power when, against the consent of any creditor, it appropriated the funds of the bankrupt estate for the purposes stated in the order or judgment appealed from. This conclusion, we think, is in harmony with the holdings of the United States Supreme Court in the case of *Randolph v. Scruggs,* 190 U. S. 533, 23 Sup. Ct. 710, 47 L. Ed. 1165. In that case the following questions were certified to that court:

"(1) Is a claim for professional services rendered to a bankrupt corporation in preparation of a general assignment, valid under the law of Tennessee, entitled to be paid as a preferential claim out of the estate of the corporation in the hands of a trustee in bankruptcy, when the corporation

was adjudicated an involuntary bankrupt within four months after the making of the assignment, and the assignment set aside as in contravention of the bankrupt law? (2) Is a claim for professional advice and legal services rendered such an assignee, prior to an adjudication of bankruptcy against the assignor, the assignment providing that the costs and expenses of administering the trust should be first paid, entitled to be proven as a preferential claim against the bankrupt estate? (3) Is a claim against such an assignee for legal services rendered at his employment in resisting an adjudication of involuntary bankruptcy against the assignor allowable as a preferential claim when the necessary effect of the adjudication would be to set aside the assignment under which the assignee was acting? (4) If not entitled to be allowed as preferential claims, may either of the items described in the foregoing questions be proven as unsecured debts of the bankrupt corporation?" The first question was answered in the negative. The second was answered thus: "Not under the deed, but so far as the assignee would be allowed for payment of the claim, the claim may be preferred in the right of the assignee." The answer to the third is, "not on the facts appearing in the certificate;" and the answer to the fourth question is as follows: "The charge for the preparation of the deed may be proved as an unsecured claim."

In referring to the effect that bankruptcy proceedings have upon a general assignment for the benefit of creditors, where such proceedings are instituted within four months after the assignment is made, Mr. Justice Holmes, in speaking for the court, says:

"It is admitted that a general assignment for the benefit of creditors, made within four months from the filing of a petition in bankruptcy, is void against the trustee in bankruptcy, so far as it interferes with his administering of the property assigned."

This could not be denied. The court then proceeds to show that, although in instituting bankruptcy proceedings the legal effect of a general assignment is destroyed, yet the assignee

may be entitled to compensation for services performed. He under certain circumstances, may also be allowed for services rendered ·by his attorney. But, with regard to the allowance for compensation, it is further·said in the opinion:

"We are not prepared to go further than to allow compensation for services which were beneficial to the estate. Beyond that point we must throw the risk of his conduct on the assignee, as he was chargeable with knowledge of what might happen."

That is, when the assignee takes charge of an assigned estate, he must be charged with the knowledge that he is acting under an instrument which in and of itself constitutes an act of bankruptcy and that, if bankruptcy proceedings are commenced within four months from the date of the assignment which result in adjudging his assignor a bankrupt, he, as the assignee, merely holds the assigned estate for the use and benefit of the creditors of the bankrupt, and that the bankruptcy court is the court which has the sole right and power to administer the estate. It is to that court, therefore, that he should apply for all allowances for compensation.

It has been held that the state court may make allowances for compensation for services rendered before the bankruptcy proceedings were instituted if a claim therefor is presented before there is an adjudication of bankruptcy. (*Louisville Trust Co. v. Comingor,* 184 U. S. 18, 22 Sup. Ct. 293, 46 L. Ed. 413.) But we think it is quite clear that the state court cannot, by making allowances for compensation to the assignee and to those claiming under him, allow for any services rendered ·after such proceedings are instituted, and by that indirect method administer upon at least a portion of the bankrupt estate. The case of *Randolph v. Scruggs, supra,* was carefully considered by the United States Circuit Court of Appeals of the First Circuit in *Re Chase* 124 Fed. 753, 59 C. C. A. 629, where it is held that, while an assignee for the benefit of creditors may be allowed compensation for services rendered "prior to the filing of

the bankrupt's petition," yet he can recover for no services except such as were beneficial to the estate.

In view of what has been said, the order or judgment making the allowances in this case cannot be permitted to stand. As appears from the decision of *Randolph v. Scruggs, supra,* the claims for compensation in question, even though they are proper, are nevertheless to be presented to, passed on, and allowed by the bankruptcy court, and that that court cannot declare at least some of them preferred claims. If, therefore, the court, which is given power to adjudicate such claims cannot declare at least some of them preferred claims, we cannot see how a state court, without such power, can do so. It may well be that there are creditors of the bankrupt who have preferential rights, and, if so, the bankruptcy court is the proper place to determine that fact; and that court is also the forum in which to determine what claims, if any, shall be preferred. Moreover, it is for the bankruptcy courts, in accordance with adjudications made by those courts, to determine what, in any given case, constitute what are denominated as beneficial services for the estate. All those things should be adjudged by the court to which is given the power to administer the estate. It is palpable that only one court should administer upon the bankrupt estate. Where this is attempted by two courts, as is the case here, some one is most likely to suffer in his legal rights. This is well illustrated in this case. Here every claim for services presented by the assignee whether for himself, his counsel, or his accountant, say nothing about other expenses, is in effect declared to be a preferred claim, and the creditors of the bankrupt must take what is left of the estate, if anything. The evidence with regard to whether the amount claimed for services rendered before bankruptcy proceedings were commenced is reasonable or otherwise is not before us, and as to that matter we express no opinion. With regard to the allowance of $242.19 to the accountant and the allowance of $205.28 to the assignee, and the other for $350 for attorneys' fees, the case is different. These allowances were all made for services rendered after the bankruptcy proceedings

had been instituted and out of money belonging to the assignor, and which the assignee had in his possession when he made his report to the district court.

As to those three items, therefore, the district court was without power to allow them, and as to them the judgment is reversed, and the cause is remanded to that court, with directions to vacate and set aside the judgment allowing those amounts, and to modify the same to that extent, and to direct the assignee to turn over all moneys and property in his hands to the trustee in bankruptcy, and to file his claim for services in the bankruptcy court. Appellant to recover costs on this appeal.

McCARTY, C. J., and STRAUP, J., concur.