## JOSEPH NELSON SUPPLY CO. v. LEARY et al.

No. 2987.  Decided April 19, 1917 (164 Pac. 1047).

1. SCHOOLS AND SCHOOL DISTRICTS—CONSTRUCTION CONTRACTS—RIGHTS OF LABORERS AND MATERIALMEN. Under Comp. Laws 1907, Section 1400x, authorizing persons furnishing labor or materials to any principal contractor for the construction of any public work for any school district, etc., to sue the contractor and the school district and to have judgment against the district for any amount due from it to the contractor, an assignee of the contract price in whole or in part takes his assignment subject to claims for labor and materials.[1]  (Page 498.)

2. SCHOOLS AND SCHOOL DISTRICTS—CONSTRUCTION CONTRACTS—RIGHTS OF LABORERS AND MATERIALMEN. Under Comp. Laws 1907, Section 1400x, one furnishing labor or materials to a contractor for the construction of a school building acquired a preferential right against the contract price so far as necessary to satisfy its claim.  (Page 498.)

[1] South H. S. S. Dist. v. McMillan Paper & Sup. Co., 49 Utah 477, 164 Pac. 1041.

3. BANKRUPTCY—ENFORCEMENT OF LIENS—JURISDICTION OF STATE COURTS. Though actions by materialmen to enforce their preferential right against moneys due a contractor from a school district under Comp. Laws 1907, Section 1400x, were commenced within four months before the contractor's bankruptcy, the state court would retain jurisdiction as such a preferential right or lien is not superseded or affected by an adjudication in bankruptcy.[1]  (Page 498.)

4. BANKRUPTCY—PROOF OF CLAIMS—EFFECT. The materialmen did not waive their right to prosecute their actions in the state court by filing their claims with the referee in bankruptcy where they did so without prejudice to their rights to prosecute such actions.  (Page 501.)

5. SCHOOLS AND SCHOOL DISTRICTS—BUILDINGS—CONTRACTS—FAILURE TO TAKE BOND—LIABILITY. Under Laws 1909, c. 68, providing that any person contracting with any school district, etc., for the construction of any public building or public work shall be required to execute a bond for the performance of the contract and with the additional obligation that the contractor shall promptly make payment for labor and materials, the failure of a school district to require a bond conditioned for the payment of labor and materials did not make defendant liable for claims of that character, even assuming that the statute imposes on the school dstrict the duty of requiring such bond.  (Page 501.)

6. PARTIES—NONJOINDER OF PARTIES—RIGHT TO OBJECT. That in an action by materialmen to enforce their preferential right against money due the contractor from a school district other laborers and materialmen were not before the court was not an objection of which the contractor's trustee in bankruptcy could avail himself, as those not in court had merely waived their right.  (Page 504.)

7. SCHOOLS AND SCHOOL DISTRICTS—CONSTRUCTION CONTRACTS—RIGHTS OF LABORERS AND MATERIALMEN. Under Comp. Laws 1907, Section 1400x, all parties furnishing labor or materials to a contractor for the construction of a school building have equal rights against moneys due the contractor from the school district, and no party acquires any right to priority by being the first to furnish labor or material or to commence an action.  (Page 505.)

Appeal from District Court, Seventh District; *Hon. A. H. Christensen*, Judge.

[1] *In re Bombino*, 44 Utah 141, 138 Pac. 1155, distinguished.

Consolidated actions by Joseph Nelson Supply Company and others against Carbon County High School District and others, in which W. H. Leary, Trustee, intervened.

From the judgment the plaintiff named and the Merchants Bank appeal.

REVERSED and remanded.

*James Ingebretsen* for appellant Joseph Nelson Supply Co.

*Edwards and Wasson* for appellants Merchants Bank.

*J. A. Howell* and *Skeen & Skeen* for respondent Leary.

*M. P. Braffet* and *Ferdinand Ericksen* for respondent Carbon County High School Dist.

FRICK, C. J.

This action is a consolidation of several actions, all of which were commenced in the District Court of Carbon County, Utah.

The first one was commenced by Chauncey P. Overfield, the second by the Joseph Nelson Supply Company, hereafter called supply company. Both of those actions were commenced against the Wright-Osborn Company, hereinafter styled contractor, and the Carbon County high school district, hereinafter designated school district, to recover for material fur-nished to said contractor for the construction of a high school building at Price, Utah, for said school district. The Merchants' Bank, hereinafter called assignee, also commenced an action against the school district to recover as the assignee of said contractor the contract price in the hands of said. school district. Wm. H. Leary intervened in the consolidated action as the trustee in bankruptcy of the estate of said contractor, which, pending the action, was declared a bankrupt, and as such trustee claims all of the funds arising out of said contract and in the hands of said school dictrict for the general creditors of said bankrupt.

The parties who appeared in the action joined in a state-

ment of facts upon which the District Court made conclusions of law and entered judgment. The trustee prevailed in the District Court as against all of the other claimants. The supply company appeals. It is stipulated, however, that whatever result is reached with regard to the claim of the supply company shall also apply to the claim of Chauncey P. Overfield. The assignee has taken a separate appeal which will be separately considered.

While the statement of facts goes into great detail, yet the facts material to this decision are, we think, fairly reflected in the following statement: On the 4th day of May, 1912, the contractor entered into a contract with the school district to construct a high school building. Said contract was completed on the 3d day of January, 1913, and the whole contract price was then earned and there is due on said contract the sum of $2,362.63, which sum said school district has offered to pay into court, and which, by agreement of the interested parties to this action, has been deposited in a certain bank to await the final determination of this action. The contractor furnished a bond ''for the faithful performance of said contract,'' but no other bond was furnished by or accepted from it. Prior to October 2, 1912, the supply company sold and delivered to the contractor at its instance and request certain material and supplies of the aggregate value of $2,249.47, all of which were sold and purchased for and were actually used in the construction of said high school building, and no part thereof has been paid. On the 20th day of February, 1913, the supply company duly commenced an action in the District Court of Carbon County against the contractor and against said school district pursuant to the provisions of Comp. Laws 1907, Section 1400x, to obtain so much of the funds in the hands of said school district as might be necessary to satisfy the amount due for material furnished by the supply company to said contractor for said high school building. Chauncey P. Overfield sold and delivered to said contractor a stoker equipment for the aggregate price of $1,168 which was used in and became a part of said high school building, and no part of said sum has been paid. On the 24th day of March, 1913, said Overfield, in order to recover said sum of $1,168 and an addi-

tional sum of $171.45, assigned to him by another claimant who furnished material for said high school, commenced an action pursuant to said Section 1400x against the contractor and said school district. On the 5th day of August, 1912, the contractor made an assignment in writing whereby it assigned to the assignee ''all moneys due us or that may hereafter become due to us for material or labor furnished, or services rendered, under and by virtue of a certain contract   *   *   * for the furnishing of the plumbing and heating plant required in the construction of the Carbon County high school building.'' Said assignment was on the 26th day of October, 1912, by the assignee, duly delivered to said school district, and said school district at a duly convened meeting on the said date duly accepted said assignment. ''By reason'' of said assignment and the acceptance thereof the assignee advanced to said contractor large sums of money, which advances, excepting certain overdrafts, were evidenced by certain promissory notes executed by the contractor, and the payment of said notes and overdrafts was intended to be secured by the assignment aforesaid. No part of the amount evidenced by said promissory notes, nor of said overdrafts, has been paid to the assignee. None of those who furnished material for said high school building, nor said trustee in bankruptcy, nor any of the creditors of said contractor, ''had actual notice or knowledge of said assignment'' to the assignee, and all of said material claimants ''advanced credit and performed work and furnished material believing their accounts would be secured by and paid from the contract price provided in said contract.'' The total amount of claims that have been filed with the referee in bankruptcy against the bankrupt estate exceeds the sum of $28,000. It is also found that both the supply company and said Overfield filed their claims with the referee in bankruptcy. Those claims were, however, filed subject to the pending actions, and, as appears from the claims, were ''filed without prejudice to the right of claimants to proceed with said actions and to obtain the relief therein demanded.''

We have aimed to eliminate all matters from the foregoing statement of facts which, in our judgment, are immaterial to the right of the materialmen to recover under Section 1400x,

and by reason of which a recovery is sought on other grounds. We have done so because we prefer to rest the recovery of the laborers and materialmen squarely upon the provisions of Section 1400x.

As before stated, the court, in its conclusions of law, in effect, held that the labor and material claimants had acquired no lien under Section 1400x; that the assignee had acquired no rights by the assignment; that the said court was without jurisdiction, and that the whole fund in litigation, which is the unpaid portion of the contract price for the erection of said high school building, should be awarded to the trustee in bankruptcy to be administered by him under the direction of the bankruptcy court. The claimants who furnished material to the contractor for said high school building, as well as the assignee, assail the conclusions of law and judgment and insist that both are erroneous.

It is more convenient to dispose of the assignee's appeal first. For the reasons stated in the case of *South High School District of Summit County* v. *McMillan P. & S. Co. et al.*, just decided, 49 Utah 477, 164 Pac. 1041, the appeal **1** of the assignee cannot prevail. In that case we expressly held that a person who claims the contract price, in whole or in part, which is due to the contractor for the erection of a public building has been assigned to him, takes the assignment subject to the claims for labor performed and material furnished to the contractor, which was by him used in the performance of his contract, and which contract was entered into pursuant to Comp. Laws 1907, Section 1400x, which section we there copied in full, and to which we shall merely refer in this opinion. In view, therefore, that the fund in question is insufficient to satisfy the preferred claims for labor performed and material furnished to the contractor, there is but one conclusion permissible, and that is that the District Court committed no error as against the assignee in denying its claim against the fund in litigation.

With respect to the appeal of the supply company the case is different. In so far as the question of preferential right to, or lien against, the unpaid contract price here **2, 3** in question is concerned, the case we have just referred

to also determines that question in favor of the supply company. For the reasons there stated, the supply company, in common with all other claimants for labor performed or material furnished to the contractor in this case, acquired a preferential right against the contract price so far as that was necessary to satisfy its claim against the contractor for material furnished to it for the high school building. The trustee in bankruptcy, however, contends that, in view that the actions of the supply company and of Mr. Overfield were commenced within four months of the filing of the petition in bankruptcy pursuant to which the contractor was adjudicated a bankrupt, for that reason the state court is without jurisdiction to determine the question of liens or preferential claims against said fund, and that the whole matter should be transferred to the bankruptcy court, and the bankrupt's estate should be there administered. If the preferential rights or so-called liens of those who performed labor for or furnished material to the contractor in this case had been created by contract within four months, or if the liens were created by court proceedings, like attachments or kindred liens, or where, as in the case of *In re Bombino*, 44 Utah 141, 138 Pac. 1155, the act which creates the alleged lien in itself constitutes an act of bankruptcy like a preferential assignment in state insolvency proceedings, then the contention of the trustee in bankruptcy would have much force. A mechanic's lien, however, or a preferential right or lien which is created by Section 1400x, *supra,* is not superseded or affected by an adjudication in bankruptcy in case an action is pending to enforce such lien or preferential right in the state court when the bankruptcy proceedings are instituted. In such event a state court that has acquired jurisdiction usually retains it. The parties may, however, by agreement, transfer the matter to the bankruptcy court if they choose to do so. The whole question is fully discussed by the author in 2 Remington on Bankruptcy (2d Ed.) Section 1599 *et seq.* In Section 1165 of the same volume it is said:

"Without consent of the parties, the state court is the proper forum, *where it is not the owner, but the contractor or subcontractor, who is the bankrupt,* and where third parties claim interests." (Italics ours.)

In Collier on Bankruptcy (9th Ed.) p. 945, the author says:

"A laborer's or materialman's lien for labor performed for or materials furnished to a subcontractor is not affected by the bankruptcy of the subcontractor."

In *re Kerby-Dennis Co.*, 95 Fed. 116, 36 C. C. A. 677, the law is stated in the third headnote in the following words:

"A statutory lien for the wages of labor is not dissolved or annulled by proceedings in bankruptcy against the employer merely because such liens are not expressly preserved by the Bankruptcy Act. On the contrary, the intention of the Bankruptcy Act is to protect all liens, whether arising by contract or by statute, except only such as are expressly declared to be annulled or invalidated."

In *Henderson* v. *Mayer*, 225 U. S. 631, 32 Sup. Ct. 699, 56 L. Ed. 1233, Mr. Justice Lamar, in speaking for the United States Supreme Court, after referring to the liens that are superseded or affected by bankruptcy proceedings, in the course of the opinion says:

"But the statute was not intended to lessen rights which already existed, nor to defeat those inchoate liens given by statute, of which all creditors were bound to take notice, and subject to which they are presumed to have contracted when they dealt with the insolvent. Liens in favor of laborers, mechanics, and contractors are of this character; and although they may be perfected by record or foreclosure within four months of the bankruptcy, they are not created by judgments, nor are they treated as having been 'obtained through legal proceedings.'"

To the same effect are *South End, etc., Co.* v. *Harben* (N. J.) 52 Atl. 1127; *In re Grissler*, 136 Fed. 754, 69 C. C. A. 406, 13 Am. Bankr. Rep. 508; *Savings Bank* v. *Jewelry Co.*, 123 Iowa 432, 99 N. W. 121, 12 Am. Bankr. Rep. 781; *In re Horton*, 102 Fed. 986, 43 C. C. A. 87; *Moreau Lumber Co.* v. *Johnson*, 29 N. D. 113, 150 N. W. 563, L. R. A. 1915F, 1132.

As pointed out in the case of *South High School District of Summit County* v. *McMillan P. & S. Co.*, *supra*, the preferential right or lien in this case exists by virtue of our statute (Section 1400x) and hence comes within the doctrine of the authorities to which we have just referred. Moreover, the sole question respecting the claimants' rights to the fund in question arises by virtue of the laws of this state, and there is no

good reason, either legal or otherwise, why the state courts should not be permitted to pass upon and adjudicate the questions that are involved.

In view that we are constrained to hold that all of the fund in question here must be distributed among the claimants who are parties to this action, there will be nothing to administer upon by the trustee in bankruptcy. But, even if the fund exceeded the claims of the materialmen, still the state court could determine the questions involved and order those claims satisfied out of the fund and turn the remainder, if any, over to the bankruptcy court to be there administered.

The trustee in bankruptcy, however, also contends that the supply company and Mr. Overfield have waived their rights to have the questions involved here adjudicated by the state court, for the reason that they filed their claims with the referee in bankruptcy as hereinbefore stated. In filing the claims with the referee the claimants, however, did so without prejudice to their rights to prosecute their actions in the state court. In the case of *American Woolen Co.* v. *Maaget*, 86 Conn. 234, 85 Atl. 583, Ann. Cas. 1913E, 889 it is expressly held that where, as in the case at bar, a claim is filed with the referee without prejudice, the claimant does not waive his right to proceed with the action pending in the state court. That case is decisive of this question.

It is next contended by the trustee in bankruptcy that in failing to require the contractor to execute the bond required by chapter 68, Laws Utah 1909, p. 115, the school district is liable for all unpaid claims of that character. Chapter 68, aforesaid, so far as material here, provides:

"Any person or persons entering into a formal contract with the state, any state institution, county, city, town, village or school district, for the construction of any public building, or the prosecution and completion of any public work or improvements, or for repairs upon any public building, public work or improvement, shall be required before commencing such work to execute a penal bond, with good and sufficient surety or sureties, for the faithful performance of said contract, with the additional obligation that such contractor or

contractors shall promptly make payment to all persons supplying labor and material used in the prosecution of the work provided for in such contract; and any person, company, association or corporation who has furnished labor or material used in the construction or repair of any public building, public work or improvement, payment for which has not been made, shall have the right to intervene and be made a party to any action instituted by the obligee on the bond of the contractor, and to have their rights and claims adjudicated in such action and judgment rendered thereon subject, however, to the priority of the claim and judgment of the obligee therein.''

While a number of cases from different states are cited by counsel, yet there is only one case in which, under a statute like ours, it has directly been held that the school district is liable for failing to exact such a bond from the contractor. *Northwest Steel Co.* v. *School District*, 76 Or. 321, 148 Pac. 1134, L. R. A. 1915F, 629. While in the case just cited the case of *Owen* v. *Hill*, 67 Mich. 43, 34 N. W. 649, is referred to, yet the statute passed on by the Michigan court was much stronger than ours, and in that case the question discussed was whether the individual members composing the board of trustees were liable for negligence in failing to require the contractor to execute such a bond. They were held liable by a divided court. In *Plummer* v. *Kennedy*, 72 Mich. 298, 40 N. W. 433, the same question was again before the Supreme Court of Michigan, and in that case the statute was held constitutional, and there again, by a divided court, the individuals were held liable for negligence. The Michigan statute passed on in that case reads as follows:

''That when public buildings or other public works are about to be built, repaired, or ornamented under contract, at the expense of this state, or of any county, city, village, township, or school district thereof, upon which buildings or works liens might attach for labor or materials if belonging to private persons, it shall be the duty of the board, officers, or agents contracting on behalf of the state, county, city, village, township, or school district to require sufficient security by bond for the payment by the contractor, and all subcontract-

ors, for all labor performed or materials furnished in the erection, repairing, or ornamenting of such building.'' Pub. Acts 1883, No. 94, as amended by Pub. Acts 1885, No. 45.

A contrary conclusion was, however, reached under statutes similar to the Michigan statute by the Supreme Court of Minnesota in *Ihk* v. *Duluth City,* 58 Minn. 182, 59 N. W. 960, and in Kansas in *Freeman* v. *City of Chanute,* 63 Kan. 573, 66 Pac. 647. In the following cases similar statutes have been discussed: *Pressed Brick Co.* v. *School District,* 79 Mo. App. 665; *Plumbing Supply Co.* v. *Board of Education,* 32 S. D. 270, 142 N. W. 1131; *Monnier* v. *Godbold,* 116 La. 165, 40 South. 604, 5 L. R. A. (N. S.) 463, 7 Ann. Cas. 768; *Blanchard* v. *Burns,* 110 Ark. 515, 162 S. W. 63, 49 L. R. A. (N. S.) 1199. ' In all of those cases what is decided is that the members composing the school boards were not individually liable. It is not held, however, that the school districts' were liable. In the case at bar the question of whether the individual members are or are not liable is not before us. They are not parties to the action and did not join in the statement of facts, and hence have not had their day in court. The question then is: Is the school district liable under our statute? It would seem that a mere cursory reading of chapter 68, *supra,* would convince any one that it was not the intention of the' Legislature to penalize the taxpayers because the trustees may fail or overlook the necessity of requiring the contractor to execute the statutory bond to secure the payment of those who have supplied either labor or material, or both, to the contractor to complete the school building that is being constructed. Indeed, the statute does not in express terms impose the duty either upon the school district or upon the trustees to exact the bond. What is said is that any person entering into a contract ''with the state, any state institution,  *  *  * or school district  *  *  *  shall be required before commencing such work to execute a penal bond  *  *  * that such contractor or contractors shall promptly make payment to all persons supplying labor and material used in the prosecution of the work provided for in said contract.'' No special duty is thus imposed on any one save the person entering into the contract. He shall be required to execute a

bond, no one else.  The phrase "shall be required" is no stronger than if the phrase "is hereby required" had been used.

Again, the state is included with all the other subdivisions, and the state cannot, without its consent, be sued.  All the other subdivisions are merely arms of the state government, and it cannot be reasonably assumed that it was intended that those should become liable for failure to take a bond while the state itself remains immune.  Moreover, there is absolutely nothing contained in the statute from which one may deduce by unavoidable inference that the Legislature intended to impose the drastic consequences contended for by the trustee in bankruptcy.  The innocent taxpayers should not be doubly penalized unless the statute in clear and express terms, or at least by unavoidable implication, has imposed such consequences.  Although it were held that "shall be required" refers to the school district rather than to the person contracting, yet that, standing alone, cannot be construed so as to make the district liable.  To so construe the statute we must import something into it.  Nor, in view of the construction and effect that we have placed on Section 1400x in the case of *South High School District of Summit County* v. *McMillan P. & S. Co., supra,* and again in this case, is such a drastic construction and result necessary.  Under our statute any one interested may demand that a bond be executed or required, and if, after demand, the school trustees should still refuse to act, then, as pointed out in the case cited from Kansas, the refusal would be willful, and a different result might follow.  No reason is given by the Oregon Supreme Court why the statute should receive the construction placed upon it by that court.  We are therefore unable to concur in the conclusions reached by that court.  Upon the other hand, we are clearly of the opinion that it was not the intention of the Legislature to impose a liability upon the school districts of this state for the mere failure to exact the bond provided for in chapter 68, *supra,* unless, as suggested, the failure is a willful one.

It is next suggested by the trustee in bankruptcy that those who performed labor and furnished material for the high school building are not all before the court.  There is absolutely nothing in the record indicating that they          6

are not all before the court. If it were true, however, that not all of that class availed themselves of their rights, that, standing alone, would hardly be a reason why those who did so should be deprived of theirs. .If there are some who did not go into court pursuant to Section 1400x, they have merely waived something they could waive, and the trustee in bankruptcy cannot avail himself of their failure to act.

Another question argued was whether there is any priority as between or among those who have claims for labor performed or material furnished to the contractor who constructs a public building and where the claims are 7 based upon Section 1400x. We are clearly of the opinion that there can be no priority between or among those who present claims under said section. The provisions of that section clearly imply that all in the same class shall be equally protected in their rights, and not that the first comer should be first served. It is just as necessary and quite as important to perform the last labor or to furnish the last material for a building as it is to perform the first labor and to furnish the first material. The rights of all are therefore equal. And, as we have seen, the action that may be commenced by any one or more merely is commenced to enforce, and not to create, the right; therefore any action that may be commenced does not give priority. All may intervene in one action or may bring separate actions. It would be preferable, however, to save the fund that all should intervene in one action. We think, therefore, that no priority was intended and none can be given by the courts. Where the fund in the hands of the public corporation is insufficient, therefore, to satisfy all claims for labor performed and material furnished to the contractor, the court should distribute the fund among those who are in court claiming their rights under Section 1400x in the proportion that their claims bear to the whole fund that is in the hands of the public corporation.

The judgment is therefore reversed, and the cause is remanded to the District Court of Carbon County, with directions to set aside the conclusions of law and to make conclusions of law in conformity with this opinion, and to enter judgment in favor of the appellant supply company, and in

favor of Chauncey P. Overfield, in accordance with the stipulation of the parties governing his claim; the supply company to recover its costs on appeal; all the other parties to pay the costs incurred by each.

McCARTY and CORFMAN, JJ., concur.